to the fourth case, Burton v. Kohn Law Firm. Mr. Pagel. May it please the court, good morning in this matter. Your Honors, the secondary zombie debt market as it exists in the United States today threatens through cases like Mr. Burton's to undermine the applicability of one of the longest standing consumer protection laws that the United States has had. What happened in this case was that Mr. Burton was sued on a debt that was at least five years old and that had been transferred through at least one other company before arriving in a state court lawsuit against Mr. Burton, who when he opined that he had no idea whether or not this was his debt, ran afoul of a magistrate's interpretation of a fourth circuit court opinion that undermines what this court has previously held to be the basis for finding whether a debt is a consumer debt or not. So what we have here is essentially a toppling of the FDCPA protections that this court put in place that enacted the congressional will to protect consumer debtors. This court has long said that what is at issue in determining whether a debt is consumer debt is the underlying transaction itself. Going back to the Miller versus McCalla case where this court dealt with a house that had been used for personal property and then converted into a business property at the time of the collection efforts, this court said it's not the debtor's subsequent use of the property that controls whether the FDCPA applies, it's the transaction when the merchant or creditor and the consumer first entered into the transaction between them. That was the same kind of thinking behind the Newman versus Bohm-Perlstein case in which this court noted that condominium assessments were debts under the Fair Debt Collection Practices Act because they arose out of the original transaction between the condominium owners and the condominium association. So this court said in Newman that even though the future transactions, the exact amount and nature of the condominium fee assessments might not be known when they first purchased that condo, did not mean that they were not governed by that initial transaction. Then the court said in Miller versus McCalla that it's that original transaction and how the parties viewed it that governs. And the primary reason for that, this court has said over and over, is that the FDCPA makes a distinction between sophisticated, or at least those people Congress assumed were sophisticated, business people and consumers. And this court has said in the past that business people, if they enter into a debt, are presumed to be able to protect themselves. That was the thinking behind Congress passing protections only for consumer debtors. So when a business person enters into a transaction and later uses that transaction for personal reasons, takes out a business card, for example, and charges some presents for his kids, that business person doesn't become less sophisticated because they misused the card. They're still able to defend themselves against the creditor or later debt collectors. But a consumer who takes out a consumer debt, such as happened with the home that was purchased in the Miller case, does not become more sophisticated simply because they opt to use a card or a debt in a business manner. And that's the first thinking behind this court's and many courts' interpretation of when you look at a debt to determine if it's consumer or business, at the outset. The other reason that became apparent from the Burton case, that that makes a lot of sense, is because when you look at what happened in my client's case here, you get yourself into this maze of logistics where you're trying to determine what exactly is a business or personal use of the card, and what quantum of evidence on these individual transactions would classify it or reclassify it as a business debt. What Cohen Law Firm and Unifund want to contend is that you have to look at somehow these individual transactions that were made along the way on the card. And that if the individual transactions were not each individually proven to some degree to be consumer debt, that Mr. Burton has no claim under the Fair Debt Collection Practices Act. Now in the first instance, with respect to a debt such as this that Mr. Burton doesn't recognize, he testified that he had somewhere between 10 and 20 credit cards overall. This was a debt that goes back five years at the time he sued. He doesn't recall having a debt of this sort at all. He certainly doesn't recognize Unifund. That puts a debtor in a very bad position to try and defend themselves against a claim that they don't think they owe. If you look at Mr. Burton's pro se pleadings in the state court case, every one of them questions the very existence of this debt and why he is being questioned for it. And when he was deposed, he testified that he had been notified not long prior to this filing of this lawsuit that he had been the victim of identity theft. So Mr. Burton is put in a situation where he doesn't remember having this card, and he might have been the victim of identity theft, and before he can invoke a federal law protecting him from unfair collection practices, he has to prove the nature of the debt. Now this court has said you prove the nature of the debt by proving that it was consumer at the outset, that the transaction was a consumer transaction. And what we're maintaining here is that that transaction is Mr. Burton applying for and opening a credit account. I liken it in one of the briefs to a closed end loan where you take out a $10,000 loan to purchase a car. What evidence is there in the record that he opened the account? Well, there's no evidence that from Mr. Burton's perspective that he opened the account. The evidence that was provided came from Citi, the original creditor, through the Fisher affidavit and the Reinecke email that supplied what they said was the terms and conditions of Mr. Burton opening the account, and that those terms and conditions and the bills of the billing statements that were sent were in fact incurred by Mr. Burton. Mr. Burton did testify that the billing statements were addressed to his house. He testified that he had resided at that house since 1991. He testified that to the extent that there were charges in Elgin, Illinois, he did previously live and sometimes visited in Elgin, Illinois. So there was sufficient evidence from which a jury could conclude that even though Mr. Burton didn't recall the account, he could have been the one to actually incur the debts on the account. And that because of that, the Citi employee, Catherine Reinecke, the senior vice president, had said that the account began as a consumer account. And there's a problem as to the admissibility of that evidence, right? Well, the magistrate did believe that that email was inadmissible from Ms. Reinecke, and we contend that it's admissible both as an admission by a party opponent and under the residual hearsay exception. Okay, but her employer wasn't a party to the case, right? Citi was not a party to the case. And the specific division that Ms. Reinecke was employed by was not a party to the case, although she was the person identified in response to a notice of deposition to answer questions on behalf of the Citi Corporation. On behalf of Citi. On behalf of Citi, correct. So Citi had been notified of a deposition. They had Ms. Reinecke as the person who would answer questions on behalf of Citi. That deposition had been noticed to all parties and originally scheduled, was then postponed and ultimately never held. Then you have this, you have these bills in effect, or statements. Correct. Purchased. Are they admissible? The billing statements are admissible because there was an affidavit from Mr. Fisher on behalf of Citi that was submitted, I believe, by Unifund. Might have submitted them, but they were supported by an affidavit and were sufficient to get into evidence as business records. Does that affidavit cover all of the requirements of the business records exception? I haven't reviewed the Fisher affidavit. I have it in the appendix and could look at it. My memory was it did, that Mr. Fisher was a qualified custodian of these and that he testified that the billing records were kept in the ordinary course of to at least allow you to resist summary judgment? To get to a jury, yes. To get to a jury. Initially we moved for summary judgment believing it would be sufficient to prove the debt was consumer. Are you pressing that right now? No, in light of the magistrate's findings too, we would be content with a jury trial at this point. Now you're saying there was enough in this record that we get to a jury. There was circumstantial evidence this was a consumer debt. Right. I guess the fairest statement of our case would be we believe a jury would always find that this was consumer debt, but that at the very least the jury should have been given that opportunity given the evidence in this case. I see. And that summary judgment should not have been granted to defendants. Correct. And in light of the summary judgment procedure, when both sides move for summary judgment, we get, as the losing party in this case, we get the benefit of those reasonable inferences. So that's where we were thinking that if we didn't get past that hurdle in summary judgment, we saw the worst possible outcome as being we would end up going to trial over this issue. I've run into my rebuttal times. Thank you. Mr. Erickson? Good morning. I'm Paul Erickson. I'm representing the Cone Law Firm. Mr. Ambrose is appearing for Unifund, but I'll be arguing today. The case is interesting from the standpoint that we've got some waffling going on as to whether this account was Mr. Burton's or not. So it's a little disconcerting to hear that now it's, he doesn't recall if it's his account, when in the state court case before Judge Zeidmelder, he vehemently denied it was his account and repeatedly said that with emphasis, in his own words when he was pro se, that this was not his account. As I understand your colleague, his point is, well, he has to at least assume that arguendo in order to show that this was consumer debt. All right? He has to assume arguendo that it's his account? Yeah. I don't understand that theory because the essence of the judge's decision on summary judgment is you need to have somebody with personal knowledge or I don't think that Mr. Burton can stand up and say, well, I'll just assume that I'm the customer on this and therefore say these are consumer purchases. Well, I think his most forceful evidence is the state, the credit card statement showing typical consumer purchases, gas, 7-Eleven stuff, things of that nature. Why isn't that, and that is introduced as a business records exception, why isn't that a business records exception and why isn't that enough to get him to a jury? Well, as to the admissibility of those statements, I'm not sure we got to that issue originally because the issue came up as to even if you look at these statements, who's going to characterize those transactions that you say are perhaps typically of a consumer nature? And I think that's where the judge disagrees and says, no, you need somebody to testify, especially someone like Mr. Burton who's an independent contractor, he's self-employed, sure he's buying gas, he's buying other things, who's to decide whether or not those are business related or not? And I think under the FDCPA, the burden is clear that it's on the person pursuing the claim that they have to prove the character of that debt. And absent a foundational witness, you don't get to the next one. Suppose this fellow wasn't self-employed, didn't run a business out of his house, etc., you know, he worked for a GE or somebody like that, would we have much trouble characterizing this stuff as business debt? I have a difficult time hypothesizing about another case because I'm trying to focus on what I know about this case. Is it conceivable that in some situation there could be consumer debt just by looking at a statement? I can't say without knowing more. But I think the burden still requires someone to testify as to the nature of it. And I don't think the judge on a summary judgment motion can do that. The judge's opinion, I must say, struck me as a little bit medieval, very frankly, about how many angels can dance on the head of a pen. I mean, the man says, look, these are consumer items. And they are. A trial jury can make that decision, can't they? Based on whose testimony characterizing the purchases? Just to be clear, I disagree with the idea that the Miller case stands for the idea that at the outset of applying for a credit card, each future transaction is determined. I think each transaction stands on its own. The cases that were cited to were unique in the stance that it's looking at a purchase of a home, a personal residence. But when you get into a credit card and you have multiple transactions, and it could be mixed, it could be any number of things, then it's a tougher question and you need a foundational witness to testify. Counsel mentioned something about, well, what if you have a business card and somebody buys toys on it? I don't think we're going to see Mr. Bagel back up here arguing, well, even though these toys are clearly consumer purchases, because the card was opened as a business card, there's no FDCPA claim. Was there any effort to look at what are listed as charges on this credit card that they could have been to Mr. Burton? Did they look at, I know that I don't, unfortunately I don't have it in front of me, but a charge through a school, for example, of some amount of money or something to see what that exact transaction was. Could it have been Mr. Burton, or could it have been one of many other Burtons in the phone book? Well, there was a small claims trial where the small claims commissioner found that Mr. Burton's testimony was incredible and found that in favor of Unifond. Did they investigate each transaction? Well, not each, but any. I don't believe the plaintiff did. Okay, well, I'm just trying to look at it, I have a lot of the same questions that Chip Ripple asked, but I'm looking at it from just the burden of showing that this is consumer debt as opposed to something else. I'm unaware of anything that Mr. Burton did in this case to try to go and look at these individual charges, which were all incurred, as counsel mentioned, around his home, apparently. So he certainly had the ability to investigate these and bring this information forward. Well, I guess that's maybe his burden to show that it is consumer debt, and that it is him as opposed to somebody else. That's the other side of it. And that's where, I think, at the outset of our brief, we said, you know, he's made his bet. You know, Mr. Burton has said steadfastly, this is not my account. But now he's waffling and trying to suggest, well, maybe it is. Well, I think he's trying to show whether these debts are consumer types of debt, which is sort of a general observation. Let me ask for the specific to see how far anybody went with it or looked into any of these charges. To my knowledge, Mr. Burton, nor his counsel, brought any evidence forward from the actual underlying transaction. To show that they were not his, for example. For instance, what they were for. Well, as an example, if there's some payment to a school, and it has nothing to do with that school. And maybe these are small debts, so it's hard to say. I was only looking at it from the standpoint of what, if you've got a charge that you obviously would not make. To separate himself from where Burton is, as opposed to himself. Yeah, I think the record is absent of that information. Mr. Burton, did he submit an affidavit as to, has he written the record here at all? Is there anything? The affidavit that was submitted didn't go into this level of detail. For instance, I think we learned for the first time on appeal that he now claims these, he did get these statements for three years. And didn't do anything about it. And now we learned in the reply brief that he's now claiming he never used a credit card for business purposes. None of this is in the record. And to your point, none of the investigation into these individual charges, any information relating to those is in the record either. So, I mean, in terms of coming forward at a summary judgment motion, they had ample opportunity. This case went on in state court and then later in federal court and none of this was developed. And Judge Joseph's pointed out that's the put up or shut up time. Come forward, you don't have a foundational witness on these charges. It's not consumer debt. You can't prove that it is. I know we briefed some other issues. If you have questions on those, I'm happy to entertain it. But I think the main thrust of this is that we believe the burden of proof has to remain on the plaintiff in a FDCPA case to prove that this is a qualified debt for purposes of the FDCPA. Thank you. Thank you. Thank you, Sir. Mr. Bagel. Thank you, your honors. Very briefly, first, I did review the Fisher affidavit during the break and he testified that he is a document control officer for the city group that the billing statements were maintained and used in the ordinary course of business. And therefore, we do think they're admissible. As to whether there's, I think the phrase was waffling, that this account was Mr. Burton's. I will tell you, if I was a juror on this case, I would conclude, as the court commissioner did in Green Bay, that this was Mr. Burton's account. But Mr. Burton's testimony is that he does not remember this account. Well, it's his testimony that he does not remember? Or is it his testimony in the state court that it is not his account? I was not at the small claims trial, so I don't know what he testified there. His state court pleadings denied incurring any debt or owing any debt to Unifund. In his interrogatory responses and deposition testimony, he said that he did not, I believe his testimony was to the effect that he did not recall this debt. And that he had had 10 to 20 cards since 2007 that he had opened. So Mr. Burton did not acknowledge that he owed this money, despite the court commissioner's finding that. Well, in his answer to the complaint in the state court suit, Mr. Bader, he denied applying for the account, right? I believe that's accurate. I don't recall exactly what Mr. Burton put into his pro se complaint. Well, that's what I think the record shows. If that's what you're reading from the record, I wouldn't dispute that at all. I'm just having a little difficult time seeing how, if this goes to trial, where Mr. Burton has the standing almost to claim it is his account now, subject to a pretty strong impeachment, don't you think? He does not have to prove that it's his account to maintain a claim under the Fair Debt Collection Practices Act. He just has to prove that he is being sued on an account wrongfully, whether or not he owes it. It would be a stronger case for Mr. Burton if he did not owe the account at all. And that's really where this case lands, is if the Cone Law Firm files a lawsuit against Mr. Burton and says, Mr. Burton, you borrowed $100,000 to finance construction of an office building, and you didn't pay that. That would clearly be an allegation of a business tax. Even if Mr. Burton says it wasn't me, and I don't know what this is, that's not governed by the FDCPA. What happened here was the Cone Law Firm said, Mr. Burton, you borrowed $8,000, spent it on Theo's Pizza and advanced auto parts in an $8.22 charge. Mr. Burton said that wasn't me. He's entitled to go to a jury and say, they have no right to collect from me, and this is likely a consumer debt. That's really the final question is, is this more likely than not a consumer debt? He doesn't have to prove he owed it. He doesn't have to prove it was definitively consumer debt. He just has to prove it's more likely than not by a preponderance of the evidence. And that's what he should have been allowed to do. Well, then you go to a jury. Okay, let's assume that it can be labeled consumer debt. And so he does have standing, I guess, to sue in, I don't know, a small claims court or whatever he did, to someone who sued against him, I guess you'd say. Because if it's consumer debt, what goes to a jury? Well, the underlying claim in this case involved whether Mr. Burton had been giving a proper notice of right to cure default under Wisconsin law. That's a prerequisite to suing under the Wisconsin Consumer Act for credit debts of this sort. So that's the claim that the district court never reached because we got hung up on the consumer debt issue. So Mr. Burton would have two potential claims. One, that if it is his debt, it wasn't eligible for suit yet. And two, that it was not, in fact, his debt and he didn't owe it at all. And he can prove it wasn't his debt. Well, a jury would have to believe it wasn't his debt based on the proof presented. So a jury could believe that this was primarily consumer debt, but that Mr. Burton didn't owe this debt. Yeah, but come up with hypotheticals about building a building or doing something else, which is obviously easy to prove. No, it wasn't my building or something like that. When it's a very small debt, that's very difficult to show it's not yours or something, unless it's to something specific like a school to support something that you would hope to have a student there. It's a student. You're paying for a student's obligation. No, I have no student at that school. That's all I'm trying to look at here. If there's something that you can put your finger on and say, that couldn't be his debt. Well, in terms of Mr. Burton proving that he was wrongfully sued, that was one of the defenses in the state court case. Just so the procedural background is clear, Cone and Unifon filed a small claim suit that Mr. Burton defended pro se in front of a court commissioner. Wisconsin has a two-step process for small claims. Mr. Burton lost in front of the court commissioner and filed a request for a de novo trial in front of a circuit judge. At that point, he retained my firm, and we appeared in the state court action and also filed the federal action. Ultimately, Judge Zeidmuller in the Brown County Circuit Court rather summarily dismissed the state court action and said, in essence, take it up in federal court. That's where they can decide this. So no finding remained in the state court as to who was liable on this. Mr. Burton would have had to convince the jury under the alternate grounds that he was not the one liable for this. Now, with respect to looking at the individual transactions, we did point out to the district judge and the magistrate that these transactions appeared to be consumer and could be construed to be consumer, but you have to keep in mind, there's nearly $9,000 of charges shown on the card, and the billing statements that were provided through discovery only covered a very tiny percentage of that. So there's not even enough information in there to investigate from our end. We can't go back over 10 years of billing statements that haven't been provided and may not exist anymore. That's, again, one of the problems Mr. Burton faced here. Okay, well, that's one of the problems. There's obviously a whole lot of attorney's fees wrapped up in this case. That's certainly a fair statement, Your Honor. Yeah, and that's sort of what's hanging out there. Somebody wins or loses, I think. We ran into one last year, I guess, where attorney's fees were the whole case. Well, attorney's fees... When it goes up higher, you know, because that's, I know, I guess one could look like maybe there's some way to settle this case. I don't know what it is, but to end it, this is irritating for everybody. This is, and on a personal level, I'll tell you, Attorney Ambrose and I have long known each other and we have resolved many cases. On a more professional level, from my perspective, this case certainly helps Mr. Burton avoid a liability he doesn't believe he should have to pay and helps justify his rights. But in a broader perspective, every advance that consumer protection lawyers make, every time a court rules in their favor, that advances the protections for thousands of other defendants who never get around to hiring an attorney. And that's the significance of the case from my perspective. Thank you. Thank you, Mr. Erickson. Case is taken under advisement and the court will proceed to the fifth case, the United States versus...